(107 So. 618)

No. 25323.

WILLARD STORAGE BATTERY CO., Inc., v. CADDO TRANSFER & WAREHOUSE CO., Inc.

(March 1, 1926.)

*(Syllabus by Editorial Staff.)*

1. **Warehousemen** ☞34(7)—**Evidence held not to show nonnegotiable warehouse receipt was issued in name of plaintiff.**

In suit to recover value of batteries stored in warehouse and returned to company storing them, evidence *held* not to show that nonnegotiable warehouse receipt was issued in name of plaintiff, creditor of company storing batteries.

2. **Evidence** ☞174(1)—**File of carbon copies of warehouse receipts, issued by defendant's predecessor in business, held admissible to support showing that original receipt was not in plaintiff's name notwithstanding Civ. Code, art. 2248.**

In suit to recover for batteries which had been stored with warehousemen and returned to company storing them, without presentation of nonnegotiable warehouse receipt, carbon copy of receipt and evidence that it was found in files kept by warehousemen issuing it *held* admissible, notwithstanding Civ. Code, art. 2248.

3. **Warehousemen** ☞16—**Warehouseman is not liable to holder of nonnegotiable receipt for failure to demand surrender of receipt on return of goods to bailor named in receipt.**

Warehouseman is not answerable to holder of nonnegotiable receipt for failure to demand surrender of receipt on return of goods to party from whom they were received and in whose name alone receipt was issued.

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Suit by the Willard Storage Battery Company against the Caddo Transfer & Warehouse Company, Inc. Judgment for defendant, and plaintiff appeals. Affirmed.

Dickson & Denny, of Shreveport, for appellant.

Hall & Bullock, of Shreveport, for appellee.

O'NIELL, C. J. This suit is to recover from a warehouseman 91 storage batteries, or $3,000 as the value of the batteries, which were stored in a public warehouse, in Shreveport. The warehouse was then conducted by the Mullen Storage & Commission Company whose business was afterwards taken over by the defendant, Caddo Transfer & Warehouse Company. The batteries were stored by the Southern Battery Company, of Shreveport, and were returned to the Southern Battery Company by the warehouseman; 63 of the batteries being delivered by the Mullen Storage & Commission Company before the transfer of its business to the defendant, and the remaining 28 batteries being delivered by defendant after taking over the business. The warehouse receipt that was issued for the batteries was a nonnegotiable receipt, and was not surrendered to the warehouseman when the batteries were returned to the Southern Battery Company.

[1] Plaintiff contends that the warehouse receipt was issued in its name as owner of the batteries. Defendant contends that the receipt was issued in the name of the Southern Battery Company as owner of the batteries. Pretermitting the question of defendant's liability for the obligations of its predecessor, the only question in the case is the question of fact whether the warehouse receipt was issued in plaintiff's name or in the name of the Southern Battery Company, as owner of the batteries. The district court decided the question in favor of the defendant, and the plaintiff has appealed from the decision.

The 91 batteries were bought by the South-

ern Battery Company from the plaintiff, whose domicile and place of business was in Dallas, Tex. The Southern Battery Company thereafter owed plaintiff a large open account for these and other batteries that had been bought. The secretary treasurer of the plaintiff corporation went from Dallas to Shreveport to secure payment of the debt. The means that he adopted was to have the Southern Battery Company store the 91 batteries in a public warehouse and give him the warehouse receipt. No doubt he intended to have the receipt issued in the name of his company as owner of the batteries, or to have a negotiable receipt issued and transferred to his company. The batteries were taken to the warehouse of the Mullen Company by Mr. Luck, president of the Southern Battery Company, and Mr. Umstead, bookkeeper for the plaintiff, and auditor for the Southern Battery Company. The warehouse receipt was handed to Umstead, who took it to the place of business of the Southern Battery Company, and there delivered it to the secretary treasurer of the plaintiff, who took it to Dallas and delivered it to plaintiff's credit manager. Nearly a year afterwards the credit manager for the plaintiff wrote to the Mullen Storage & Commission Company, saying:

"Inclosed we hand you warehouse receipt No. 358 dated Shreveport, July 31, 1920, covering 91 batteries, as listed thereon, in your warehouse No. 1, for our account."

He requested the Mullen Storage & Commission Company to crate the batteries and ship them to the Willard Storage Battery Company, Dallas, Tex., and said that, if there were any charges, such as insurance, storage, packing, crating, and shipping, the charges would be borne by the Southern Battery Company of Shreveport. The letter was delivered to the defendant, Caddo Transfer & Warehouse Company; the Mullen Storage & Commission Company having gone out of business. The president of the Caddo Transfer & Warehouse Company being absent from Shreveport, the chief clerk answered, acknowledging receipt of the letter from plaintiff's credit manager. In his answer, the defendant's chief clerk said that the batteries had been delivered to the Southern Battery Company, and that it seemed that the warehouse company had overlooked the fact that the batteries were stored for the Willard Storage Battery Company, and not for the Southern Battery Company. The chief clerk said also, in his letter, that he had taken the matter up with Mr. Luck, president of the Southern Battery Company, and that the latter was writing to plaintiff and would make satisfactory arrangements.

The letter written by defendant's chief clerk was an admission or assumption on his part that the batteries had been stored for plaintiff's account and had been delivered to the Southern Battery Company under an erroneous belief that they were stored for the latter's account. As a matter of fact, the warehouse receipt, which was a nonnegotiable receipt, contained merely an acknowledgment that the warehouseman, conducting a public warehouse, under the laws of Louisiana had received from the Southern Battery Company, in apparent good order, the property described in the receipt, and the property was there described by giving the lot numbers and stating the number of batteries of each lot number. There was no indication in the receipt that the batteries were received for account of any one but the Southern Battery Company, or that any one else had any interest in or claim upon the batteries. The receipt was produced and filed in evidence by the defendant in the trial of this case, and it was identified and proven to be the same document that the plaintiff's credit manager had sent in his letter addressed to the Mullen Storage & Commission Company and delivered to defendant. The receipt was

made out and signed by E. H. Payne, who was general manager of the Mullen Storage & Commission Company when the batteries were received. He had left Shreveport, and was employed as a railroad agent in Graham, Tex., when this controversy arose, and had no interest whatever in the matter. He testified, under commission, that the receipt produced by the defendant, and proven to be the one that had been received in the letter from plaintiff's credit manager, was the same receipt that he had issued to the Southern Battery Company when the batteries were received by the Mullen Storage & Commission Company, and he identified his handwriting and signature on the receipt. Several other witnesses testified that the handwriting and signature on the receipt were the genuine handwriting and signature of Mr. Payne, and there was no evidence offered to the contrary. In fact, it is not disputed that the handwriting and signature on the receipt which defendant produced and filed in evidence was the handwriting and signature of Mr. Payne. Mr. Umstead testified that the receipt produced by defendant and filed in evidence was not the receipt that he had received from the Mullen Storage & Commission Company and delivered to plaintiff's secretary treasurer when the batteries were stored. The latter testified that the receipt produced and filed by defendant was not the receipt that he had received from Umstead and delivered to plaintiff's credit manager, and he, in turn, testified that the receipt produced and filed by defendant was not the receipt that he had received from the secretary treasurer and had inclosed in his letter addressed to the Mullen Storage & Commission Company and delivered to defendant. We are convinced, as the district judge was convinced, that the three witnesses referred to were mistaken. It was the intention of Umstead and of plaintiff's secretary treasurer, when the batteries were delivered to the

warehouse, to take a receipt that would protect the Willard Storage Battery Company, and they and plaintiff's credit manager remained under the impression that they had obtained such a receipt. That impression convinced them, quite naturally, that the receipt that the defendant produced and filed in evidence in this case was not the receipt that was issued when the batteries were delivered to the warehouse. None of the three witnesses referred to testified that he had ever scrutinized the original receipt to make sure that it was issued in the name of the Willard Storage Battery Company as owner of the batteries, or to see that the company was protected, either by having a negotiable receipt, or by having it indicated on the receipt that the batteries were held for account of, or deliverable only to, the Willard Storage Battery Company. Our belief is that the three witnesses referred to took it for granted, when they received the warehouse receipt, that the batteries could not be delivered by the warehouseman without surrender of the receipt, and that therefore the Willard Storage Battery Company was protected by having possession of the receipt. They would have been quite right in so taking it for granted if the receipt had been a negotiable receipt, duly transferred.

To say that the receipt which the defendant produced and filed in evidence in this case is not the receipt that was issued by the warehouseman for the batteries is the same as to say that the defendant procured E. H. Payne to make out a bogus receipt after this controversy arose. We do not believe that, for there is not, elsewhere in the evidence in the case, any reflection upon the honesty of Mr. Payne, or of any one connected with the defendant.

The defendant's chief clerk, who received and answered the letter from plaintiff's credit manager, which we have referred to, testified that he did not examine the receipt in-

closed in the letter, but assumed that it was true, as the credit manager said, that the batteries had been stored for the Willard Storage Battery Company's account. The district judge believed, and we believe, that the explanation given by the witness was true.

[2] The Mullen Storage & Commission Company kept carbon copies of the negotiable and nonnegotiable warehouse receipts in separate looseleaf binders. The binders were produced and introduced in evidence in this case. In the binder containing the carbon copies of the nonnegotiable receipts issued by the company was a carbon copy of the receipt produced and filed in evidence by the defendant in this suit, and it was proven that the carbon copy was found in the binder, in its proper place, and under its appropriate serial number, after this controversy arose. The learned counsel for plaintiff objected to the introduction of the binders in evidence, on the ground that, according to article 2248 of the Civil Code, a merchant's books are not admissible as evidence in his favor. We doubt that the rule is applicable to such records as the fac similes kept by a warehouseman of the warehouse receipts issued by him; and we doubt especially that the rule is applicable to such records made, not by the warehouseman who resorts to them for evidence, but by a predecessor in business. Be that as it may, the fact itself that a carbon copy of the receipt in contest in this case was found in the files kept by the warehouseman who issued the receipt, and the carbon copy of the receipt itself as evidence, were not subject to the rule stated in article 2248 of the Civil Code.

[3] A warehouseman is not answerable to the holder of a nonnegotiable warehouse receipt for failure to demand a surrender of the receipt on return of the goods to the party from whom they were received, and in whose name alone the receipt was issued.

The judgment is affirmed.